# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ERIC L. PATTERSON, | ) | Case No. 1:21-cv-470 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Thomas M. Parker |
| UNITEDHEALTHCARE | ) | |
| INSURANCE COMPANY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

This civil action stems from years of State-court litigation between Plaintiff Eric Patterson and several defendants related to an ERISA-covered healthcare plan that Defendant Swagelok Company sponsors. In this lawsuit, Plaintiff sues Swagelok, UnitedHealthcare Insurance Company, UnitedHealth Group, Inc., and United Healthcare Services, Inc. (collectively, "UnitedHealthcare"), Optum Group, LLC and Optum Inc. (collectively, "Optum"), and two attorneys, Shaun Byroads and Daran Kiefer, and their firm, Kreiner & Peters Co., LPA (collectively, "Kreiner & Peters").

Plaintiff asserts nine claims for violations of the Employment Retirement Income Security Act, the Racketeer Influenced and Corrupt Organizations Act, and fraud, conversion, civil conspiracy, and unjust enrichment under State law. (ECF No. 1.) Defendants jointly move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) (ECF No. 11), which Plaintiff opposes (ECF No. 16). Plaintiff also seeks leave

to amend (ECF No. 36), which Defendants oppose (ECF No. 38). For the reasons that follow, the Court **DISMISSES** Plaintiff's claims and **DENIES** leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

On Defendants' motion to dismiss, the Court takes the facts alleged in the complaint as true and takes judicial notice of State-court opinions and proceedings mentioned in the complaint, without converting this motion into one for summary judgment. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *see also McLaughlin v. CNX Gas Co.*, 639 F. App'x 296, 298 (6th Cir. 2016).

### A.     Plaintiff's Case Against Swagelok in State Court

At all relevant times, Mr. Patterson was covered under the Swagelok Company Welfare Benefits Plan-Medical Benefits Program (the "Swagelok Plan"), which is subject to ERISA's regulations. (ECF No. 1, ¶ 11, PageID #9.)

In November 2014, Mr. Patterson was injured in a motor vehicle accident with a semi tractor-trailer. (*Id.*, ¶ 30, PageID #16.) UnitedHealthcare, through the Swagelok Plan, paid for Mr. Patterson's medical treatment. (*Id.*, ¶ 31, PageID #16.) Mr. Patterson also submitted a claim for compensation to the truck's insurer. (ECF No. 1, ¶ 30, PageID #16.) Optum, a subsidiary of UnitedHealthcare, subsequently contacted Mr. Patterson and notified him that if he settled with the insurer for the driver of the truck, UnitedHealthcare, as administrator of the Swagelok Plan, intended to invoke the Swagelok Plan's subrogation and reimbursement provisions to collect approximately $35,500.00 in medical benefits paid to Mr. Patterson. (*Id.*, ¶¶ 31, 34, PageID #16–17.)

2

On November 18, 2016, Mr. Patterson sued the truck's insurer for compensatory damages and the Swagelok Plan for declaratory relief in the Summit County Court of Common Pleas. (*Id.*, ¶¶ 30–32.) Mr. Patterson sought a declaration that he had no obligation to reimburse the Swagelok Plan with the proceeds that he might recover from the truck driver's insurer. (*Id.*, ¶ 32.) Optum, through Kreiner & Peters, represented the Swagelok Plan in that case. (*Id.*, ¶ 33.) Mr. Patterson maintains that throughout the State proceedings, the Swagelok Plan and UnitedHealthcare represented that no "Plan Document" existed, as Mr. Patterson defined it in his discovery requests, and that the only "document" that did exist was a Summary Plan Description, or SPD, which provided for subrogation and reimbursement. (*Id.*, ¶ 34, PageID #17–21.) In June 2017, Mr. Patterson and the State defendants settled, and Mr. Patterson agreed to pay Optum $25,000, which would partially reimburse the Swagelok Plan and UnitedHealthcare. (*Id.*, ¶ 35, PageID #21.)

### B.    Mrs. Patterson and the "Smoking Gun"

A short time later, Mr. Patterson's wife—Laura Patterson—was involved in separate car accident. (*Id.*, ¶ 36, PageID #21–22.) At the time, she was also covered by the Swagelok Plan administered by UnitedHealthcare, and she likewise received Plan benefits for her injuries. (*Id.*) As with her husband, Optum contacted Mrs. Patterson on behalf of UnitedHealthcare seeking subrogation or reimbursement of payments that it made on her behalf, should she ultimately recover from the other driver or his insurance. (*Id.*, ¶ 37, PageID #22.)

Mrs. Patterson sued the negligent driver's insurer in State court for compensatory damages and sought a declaratory judgment against the Swagelok Plan regarding its subrogation and reimbursement rights.  (*Id.*, ¶ 38.)  Again, the Swagelok Plan allegedly denied that a Plan Document existed and referred the court to the SPD containing the pertinent language.  (*Id.*, ¶ 39, PageID #22–27.) Mrs. Patterson subsequently settled with the negligent driver and his insurer, but continued to pursue the claim against the Swagelok Plan.  (*Id.*, ¶¶ 47–48, PageID #27.)

After more discovery, the Swagelok Plan and its attorneys turned over to Mrs. Patterson the Plan Document "for the first time."  (*Id.*, ¶ 49, PageID #28.)  The State court eventually entered summary judgment for Mrs. Patterson, declaring that the Swagelok Plan had no subrogation or reimbursement provisions and that she was not required to reimburse it for benefits paid on her behalf.  (*Id.*, ¶ 52, PageID #29.) By the time of this ruling, however, Mr. Patterson had already paid the Plan the $25,000 he agreed to pay under the 2017 settlement agreement in his action in State court.  (*Id.*, ¶ 53.)

## C.    The Original Complaint in This Federal Lawsuit

Complaining that he paid "money in response to claims of legal obligations that did not exist," Mr. Patterson sues UnitedHealthcare, Optum, Swagelok, and Kreiner & Peters.  (*Id.*, ¶¶ 1, 11–16, PageID #4, #9–11.)  Plaintiff does not sue the Plan.  Under ERISA, Plaintiff (1) seeks a declaratory judgment that the subrogation and reimbursement terms of the Swagelok Plan are invalid (Count I); (2) asserts a claim

4

for breach of fiduciary duty (Count II); (3) claims violations of 29 U.S.C. § 1106 (prohibited transactions) (Count III); and (4) alleges violations of 29 U.S.C. §§ 1021, 1082–1085b through Swagelok's alleged failure properly to notify Swagelok Plan beneficiaries of its financial status (Count IX).  (*Id.*, PageID #27, 28, 35.)  For each claim, Plaintiff seeks to (1) enjoin Defendants from further ERISA violations, (2) remove and replace UnitedHealthcare and Optum as the Plan Administrators, and (3) recover $25,000 in monetary relief.  (*Id.*, PageID #61, 62, 65.)

Plaintiff also alleges that Swagelok, Optum, UnitedHealthcare, and Kreiner & Peters engaged in a civil RICO conspiracy, in violation of 18 U.S.C. § 1962 (Count VI). (Id. PageID #48.)  Specifically, Plaintiff alleges that Defendants were engaged in an enterprise to "share profits derived from the subrogation [or] reimbursement scheme," which amounts to a "pattern of racketeering activity" based on predicate acts including embezzlement, mail fraud, wire fraud, and unlawful welfare-fund collection.  (*Id.*, ¶ 124, PageID #49.)  On this count, Plaintiff seeks $25,000 in compensatory damages.  (*Id.*, PageID #61.)

Finally, Plaintiff brings State-law claims of fraudulent and negligent misrepresentation (Count IV), conversion (Count V), civil conspiracy (Count VII), and unjust enrichment (Count VIII) against UnitedHealthcare, Optum, and Swagelok. (*Id.*, PageID #45, 48.)  On each of these claims, Plaintiff also seeks $25,000 in compensatory damages.  (*Id.*, PageID #63–64.)  Notably, Laura Patterson is not a party to this lawsuit, and Mr. Patterson pursues these claims on his own behalf in the initial complaint.  (*Id.*, ¶ 11, PageID #9–10.)

### D.      Proposed Amended Complaint

Defendants collectively moved to dismiss all clams.  (ECF No. 11.)  After that motion was fully briefed, Plaintiff sought leave to amend.  (ECF No. 36.)  The proposed amendment dismisses Kreiner & Peters (and the individual lawyers named as defendants) and Defendant Optum Group, LLC.  (ECF No. 36, PageID #809.)  Further, the proposed amendment drops the State-law claims in Count V (conversion), Count VII (civil conspiracy); and Count VIII (unjust enrichment).  (*Id.*)  It also drops the federal claims in Counts VI and IX (RICO and certain ERISA claims) and the request in Count I (ERISA) for declaratory and injunctive relief.  (*Id.*, PageID #810.)  Beyond dropping numerous factual allegations, the complaint otherwise does not add new claims.  (*Id.*)  At bottom, in the proposed amendment, the operative federal claims remain largely the same.  (*Id.*)  In fact, the proposed amendment does not allege any new or different operative facts.  Its primary substantive change seeks to proceed on behalf of two putative classes for claims of loss similar to those of Mr. Patterson.  (*Id.*; *see also* ECF No. 36-2, ¶¶ 63–75, PageID #897–99.)

## JURISDICTION

At the outset, the Court begins with two jurisdictional questions, one of which Defendants raise and the other which the Court examines *sua sponte*.  Under Rule 12(b)(1), a defendant may move to dismiss based on the defense that the court lacks subject matter jurisdiction over a claim.  Fed. R. Civ. P. 12(b)(1).  Such a motion may proceed as a facial or a factual challenge.  A facial challenge attacks the sufficiency of a plaintiff's complaint and its "allegations of jurisdiction," while a factual challenge requires the court to "weigh the evidence concerning jurisdiction presented by the

parties and decide jurisdictional facts." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134–35 (6th Cir. 1996) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324–25 (6th Cir. 1990)).  Defendants argue that the *Rooker-Feldman* doctrine precludes Plaintiff's claim, which is a facial challenge not a factual one.  *See Reguli v. Guffee*, 371 F. App'x 590, 595 (6th Cir. 2010) (considering the matter *de novo* and taking the facts alleged as true when reviewing the district court's ruling that *Rooker-Feldman* precluded jurisdiction).  With a facial attack, the court "takes the allegations in the complaint as true," akin to the "safeguard employed under" Rule 12(b)(6).

## I.    The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine cautions federal courts against exercising appellate-like jurisdiction over State-court judgments.  *See Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923).  The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon-Mobil Corp.*, 544 U.S. at 284.  Whatever the complexities of applying *Rooker-Feldman* might be, the Sixth Circuit's view is clear:

> Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing:  Stop.  If the temptation lingers, the court should try something else:  Reconsider.  And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it.

*VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 409 (6th Cir. 2020) (Sutton, C.J., concurring).  This is "all we lower court judges should need to know" in deciding whether to exercise jurisdiction or dismiss an action based on this doctrine alone.  *Id.*  Plaintiff challenges Defendants' conduct in inducing him to settle in his action in State court, not the settlement agreement itself.  Therefore, the *Rooker-Feldman* doctrine does not bar the exercise of the Court's jurisdiction.

## II. Standing

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction and ensure that it has the authority to proceed.  *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted).  Standing presents a "threshold determinant[] of the propriety of judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975).  Although a plaintiff might have statutory standing under ERISA, he must also have Article III standing.  *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020) (dismissing claims brought under ERISA for lack of Article III standing).

"[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up).  The plaintiff must also "demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding

that, notwithstanding the fact that a plaintiff had standing to pursue damages, he lacked standing to sue for injunctive relief)).

The Court considers whether Plaintiff has Article III standing to sue for prospective injunctive relief under Counts I, II, III, and IX. In other words, does Plaintiff have standing to sue to enjoin Defendants' alleged ERISA violations and remove UnitedHealthcare and Optum as administrators of the Swagelok Plan? The Court holds that he does not because he fails to allege an actionable injury and, to the extent he does allege an injury, actionable or not, the injunction he seeks under ERISA will not redress that injury.

### II.A. Injury in Fact

To establish injury in fact, a plaintiff must show that the allegedly injured party suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. Particularization is a necessary but not sufficient requirement for standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 349 (2016). An injury must also be concrete, which means it must actually exist. *Id.* at 340 (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury is real and not abstract, but not necessarily tangible. *Id.* (citations omitted). In the context of prospective relief, past harmful conduct does not in itself create a case or controversy absent "any continuing, present adverse effects." *Lyons*, 461 U.S. at 102.

Plaintiff asserts that Defendants' alleged ERISA violations injured him in the amount of $25,000 just as it injured other Plan beneficiaries by pursuing them based

on subrogation or reimbursement rights for which the Plan does not provide.  (ECF
No. 1, ¶ 58, PageID #31.)  But this alleged injury does not support Plaintiff's prayer
for *prospective* relief.  "[T]hreatened injury must be certainly impending to constitute
injury in fact, and allegations of possible future injury are not sufficient." *Clapper v.
Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiff fails to allege that he, the Plan,
or other beneficiaries are suffering a present or future harm, let alone an impending
one.   In other words, Plaintiff's complaint to enjoin Defendants' alleged ERISA
violations would serve as prospective relief for past conduct—not for present,
continuing, or future conduct.  Without some form of present or future harm,
Plaintiff's claims are not actionable.  Instead, Plaintiff's alleged injuries support only
a claim for retrospective relief, in this case, compensation for the $25,000 that
Defendants allegedly fraudulently induced Mr. Patterson to pay in his now-settled
action in State court.

## I.B.   Redressability

In the same vein, the prospective relief that Plaintiff seeks under ERISA will
not redress his injury.   The redressability requirement insists that the plaintiff
demonstrate that the remedy he seeks will likely cure the injury of which he
complains.  *See, e.g.*, *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100
(1979) ("In no event . . . may Congress abrogate the Art. III minima:  A plaintiff must
always have suffered 'a distinct and palpable injury to himself' that is likely to be
redressed if the requested relief is granted." (citation omitted)).  Here, enjoining

Defendants' alleged conduct or replacing the administrator of the Swagelok Plan will not remediate Plaintiff's $25,000 loss.

* * *

For these reasons, Plaintiff does not have standing to sue for prospective relief, nor does he have standing to sue for retrospective relief on behalf of the Plan or other beneficiaries. Plaintiff does, however, have standing to sue for the $25,000 loss he incurred in his action in State court.

## ANALYSIS

To withstand a motion to dismiss, Plaintiffs must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above the speculative level." *Cook v. Ohio Nat. Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a complaint must offer more than "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted). Rule 8, along with *Twombly* and *Iqbal*, require a plaintiff to "plead enough factual matter to raise a plausible inference

of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up).  This inference "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Id.* (citations omitted).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

## I.  ERISA Claims (Counts I, II, III & IX)

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990).  To protect participants in an employee benefit plan, ERISA "establish[es] standards of conduct, responsibility, and obligation[s] for fiduciaries of employee benefit plans."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quotation and citation omitted).  In this way, ERISA law is akin to "trust law." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989).

Under 29 U.S.C. § 1132(a)(1)(B), an individual can bring suit to recover benefits due to him, enforce his rights, or clarify his rights to future benefits. Relatedly, Section 1132(a)(3) permits a participant, beneficiary, or fiduciary to obtain "appropriate equitable relief" to redress violations of ERISA or terms of a plan.  29 U.S.C. § 1132(a)(3)(A)–(B).  This "catchall" provision acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 [29 U.S.C. § 1132] does not elsewhere adequately remedy."  *Varsity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

12

On Counts I through III, Plaintiff sues Defendants under Sections 1132(a)(1)(B) and 1132(a)(3).  On Count IX, Plaintiff sues under Section 1132(a)(3) only.  To start, Plaintiff fails to state a claim under Section 1132(a)(1)(B) because he does not allege that Defendants are withholding benefits from him and does not seek clarification of his current or future rights.  Moreover, the Swagelok Plan already provided him with medical benefits for his injuries sustained in the car crash, and Plaintiff resolved the claims relating to that accident years ago.  Instead, Plaintiff seeks to recoup the $25,000 that he paid to the Plan.  Therefore, only Plaintiff's claims under Section 1132(a)(3) might have merit.

Under Section 1132(a)(3), a beneficiary or participant can sue to "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  So, the Court must discern whether Plaintiff's prayer for relief for Counts I through III and IX to disgorge $25,000 and any profits is an "appropriate equitable remedy."  The Supreme Court has identified appropriate equitable remedies in the ERISA context.  *See Montanile v. Board of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136, 142–44 (2016) (listing the Court's applicable precedents).  The governing principle is that whether a remedy "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (citation omitted).

13

In Counts I through III and IX, the basis for Plaintiff's claims is to recover his $25,000 monetary loss in connection with the settlement of his prior action in State court.  Although he categorizes the appropriate remedy as "disgorgement," Plaintiff really seeks compensatory damages.  (*See* ECF No. 1, PageID #61–62 (requesting that Defendants "repay" $25,000 and seeking "compensatory damages").))  Indeed, disgorgement is a form of restitution.  *See* Restatement (Third) of Restitution and Unjust Enrichment § 3 cmt. a (American Law Inst. 2011) (recognizing disgorgement as "one of the cornerstones of the law of restitution and unjust enrichment").  Normally, disgorgement is available where a defendant possesses a plaintiff's property interest or, if the defendant no longer possesses that property, where the defendant profited from dissipating the plaintiff's property interest.  *Great-West Life & Annuity Ins.*, 534 U.S. at 213 (distinguishing an equitable remedy from a legal one).  Neither scenario applies in this case.  Assuming that Plaintiff has a property interest in the $25,000 that he paid in connection with the settlement of his previous action in State court, the Swagelok Plan—not the named Defendants—possess that interest and any profit derived from it.  Therefore, Plaintiff must sue the Swagelok Plan for disgorgement.  By suing Defendants, Plaintiff does not seek to reclaim his property interest, he seeks solely to recover money—money other than the $25,000 he previously paid to the Plan.  Therefore, Plaintiff does not seek equitable monetary relief—return of his property; he seeks legal monetary relief—more specifically, compensatory damages.  As the Supreme Court recognized:

> In cases in which the plaintiff *could not* assert title or right to possession of particular property, but in which nevertheless he might be able to

show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law.*

*Id.* at 213 (cleaned up).

Because Section 1332(a)(3) permits a plaintiff to sue for equitable relief only, Plaintiff fails to state a claim on which the Court can grant relief. *Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 609 (6th Cir. 2007). Therefore, the Court **DISMISSES** Plaintiff's ERISA claims.

## II.     RICO Claim (Count VI)

In Count VI, Plaintiff alleges that Defendants engaged in a RICO conspiracy to defraud him. To impose civil liability under RICO, a Plaintiff must plead and prove (1) conduct (2) of an enterprise, (3) engaged in or affecting interstate commerce, (4) through a pattern (5) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "Racketeering activity" requires at least two predicate acts that occurred within a ten-year period. *H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989).

Defendants contend that Plaintiff fails to plead facts to support a "pattern of racketeering activity" because the allegations racketeering activity—embezzlement, mail fraud, wire fraud, and unlawful welfare fund payment—are insufficiently pled. The Court addresses each alleged predicate act in turn.

### II.A.   Embezzlement

A violation of 18 U.S.C. § 664 occurs when a person "[e]mbezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of

15

any employee welfare benefit plan." To prove a violation of Section 664, the United States must show that the defendant "(1) embezzled (2) funds (3) from an employee benefit plan, and (4) with specific intent to deprive the plan of its funds." *United States v. Krimsky*, 230 F. 3d 855, 860 (6th Cir 2000).

Here, Plaintiff does not plead that Defendants embezzled money from the Swagelok Plan. Plaintiff alleges generally that Defendants collected $25,000 from him and profited from it. Construing the complaint in Plaintiff's favor, this allegation without more fails to create a plausible inference that those payments to Defendants exceeded their contractually established fees or that the payment or associated costs were not paid for the benefit of the Plan. For example, there is no allegation that Defendants took the $25,000 from the Plan; nor is there an allegation or inference that a person working for any Defendant used that money for personal use. Without more, the complaint simply fails to plead any fact supporting embezzlement as a predicate offense.

### II.B.  Mail and Wire Fraud

Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). At a minimum, a plaintiff must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the resulting injury to the plaintiff. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). Further, with respect to alleged misrepresentations, Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to

plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

To establish mail and wire fraud, the Plaintiffs must plead the existence of "(1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). A scheme to defraud involves intentional deception to part a person from his property:

> Intentional fraud[] consist[s of] deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end. To allege intentional fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on.

*Id.* (citation and emphasis omitted).

Here, Plaintiff fails to plead the time, place, and manner of the alleged misrepresentations he claims are fraudulent. To be sure, Plaintiff sufficiently alleges the circumstance by which Defendants allegedly defrauded him, but he does not allege facts of prior fraudulent conduct that qualify as a predicate act under RICO. Therefore, mail fraud and wire fraud may not serve as predicate acts for Plaintiff to state a RICO claim.

### II.C.   Violation of 18 U.S.C. § 1954

To allege a violation of Section 1954, which prohibits influencing the operations of an employee benefit plan, Plaintiff must plead facts showing that Defendants received and retained a payment from Plan funds and that the payment was not reasonable compensation for services rendered to the Plan.   Under Section 1954, however, a benefit plan service provider may receive from benefit plan funds a "bona fide salary, compensation, or other payments made for . . . services actually performed in the regular course of his duties as . . . administrator . . . [or] agent . . . of such plan, employer, employee organization, or organization providing benefit plan services to such plan."  18 U.S.C. § 1954(4).

Plaintiff fails to plead that Defendants collected more money than their contractually established amount.   Further, Plaintiff's complaint fails to allege the facts and circumstances of the payments or kickbacks that allegedly violate this statute.   As a result, the Court cannot draw even an inference that the money that Plaintiff paid to the Plan went anywhere other than to the Plan.

* * *

At bottom, Plaintiff alleges a single act:  Defendants induced Plaintiff to pay $25,000 in connection with his action in State court.   This one transaction and related occurrences do not, as a matter of law, constitute the separate predicate acts necessary to maintain a pattern of activity under RICO.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723–24 (6th Cir. 2006).   The Court **DISMISSES** Plaintiff's RICO claim.

### III.  State-Law Claims (Count IV, V, VII & VIII)

Because the Court dismisses each of the Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiff's State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiff's right to pursue the remaining claims in State court, *see* 28 U.S.C. § 1367(c)(3).  "[G]enerally '[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).  To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Because this case is in its infancy—the Court stayed the action at the motion-to-dismiss stage, and the parties have not conducted discovery—dismissal will not prejudice any party, will protect the interests of judicial economy, and will allow the State courts to decide the State-law claims Plaintiff alleges.  Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's State-law claims of fraud and negligent misrepresentation (Count IV), conversion (Count V), civil conspiracy (Count VII), and unjust enrichment (Count VIII).

19

IV.     **Leave to Amend**

Plaintiff seeks leave to amend his complaint, to add claims on behalf of a class. (ECF No. 35.)  Defendants oppose the amendment, arguing (1) that Plaintiff unduly delayed his request to amend, which is prejudicial, and (2) futility.  (ECF No. 38, PageID #1065, 1067.)  With respect to futility, Defendants argue that the proposed amendment fails to cure the defects in the original complaint.  (*Id.*, PageID #1068.) Because Plaintiff seeks to add class allegations, Defendants devote much of their futility argument contesting those allegations under Rule 23.  (*Id.*, PageID #1068– 78.)

The Court rejects the argument that Plaintiff delayed in seeking to amend.  At this stage of the proceedings, the parties have not begun discovery, and the Court has not entered a case management order with a deadline for amendments.  Therefore, the liberal amendment policy of Rule 15(a)(2) applies.  Moreover, on June 8, 2021, the Court informed the parties that it would resolve the pending motion to dismiss before setting the balance of the case calendar.  Accordingly, Plaintiff reasonably refrained from seeking to amend his complaint.

Further, the proposed amended complaint does not unfairly prejudice Defendants.  It does not add new or different factual allegations or claims.  (ECF No. 36; ECF No. 36-1.)  To the contrary, it drops many allegations.

Plaintiff's proposed amendment does not add new or different substantive factual allegations or claims.  (ECF No. 36-1.)  Although the proposed amendment adds class allegations, at the motion-to-dismiss stage, the parties have not yet

engaged in discovery.  At this early stage of the litigation, it is difficult to see what significant additional resources Defendants would have to expend.

As for futility, the Court agrees with Defendants on the merits of Plaintiff's federal claims.  On these claims, Plaintiff's factual allegations and causes of action in the proposed amendment are the same as in his original complaint (or pared back) and fail for the reasons stated above.  Assuming the propriety of litigating Rule 23 issues on a motion for leave to amend, about which the Court expresses no opinion, adding the class allegations does not change the result for two reasons.  First, Plaintiff cannot bring claims on behalf of a class for which he does not independently have standing.  *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (recognizing that a class representative must demonstrate "individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action").  That is, Plaintiff may not pursue claims on behalf of a class he may not pursue himself.  Second, Plaintiff makes no new allegations that would allow his individual claims to survive dismissal such that he might be able to pursue those federal claims on behalf of a class.

Accordingly, the Court **DENIES** Plaintiff's motion to amend as futile.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Specifically, the Court **DISMISSES WITH PREJUDICE** Counts I, II, III, VI, and IX and declines to exercise supplemental jurisdiction and **DISMISSES WITHOUT PREJUDICE** Counts IV, V, VII, and VIII.  Further, the Court **DENIES** Plaintiff's

21

motion for leave to amend.  The Court **DIRECTS** the Clerk to enter judgment accordingly.

       **SO ORDERED.**

Dated:  January 31, 2022

                                         J. Philip Calabrese
                                         United States District Judge
                                         Northern District of Ohio