## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC L. PATTERSON, | ) | Case No. 1:21-cv-470 |
| | ) | Case No. 1:23-cv-378 |
| Plaintiff, | ) | |
| | ) | Judge J. Philip Calabrese |
| v. | ) | |
| | ) | Magistrate Judge |
| UNITEDHEALTHCARE | ) | Jonathan D. Greenberg |
| INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Eric Patterson and his wife were involved in separate car accidents a few months apart.  He sued the driver of the other car involved in the accident and obtained a settlement.  Mr. Patterson's health insurance provider pursued reimbursement of the costs it paid as a result of the accident.  It did so pursuant to a provision in a summary plan description of the policy terms, while maintaining in litigation that no plan document existed.  Eventually, Mr. Patterson and his insurer settled for $25,000.  When Mr. Patterson's wife found herself in the same situation, the same insurer provided a plan document in discovery in her case in State court, resulting in several lawsuits among the parties.  This federal lawsuit brought claims under the Employee Retirement Income Security Act of 1974 and State law.  The court dismissed the federal claims and declined to exercise jurisdiction over the State-law claims, which Plaintiff later refiled in State court.

On appeal, the Sixth Circuit held that ERISA authorized Mr. Patterson to sue for breach of fiduciary duty and prohibited transactions to seek equitable relief resulting in the return of the $25,000 he paid in State court to resolve litigation over his insurer's subrogation and reimbursement rights. Otherwise, the appellate court affirmed and held that Mr. Patterson had standing only to pursue his own claims, not claims on behalf of others through a class action. It left several other pleading-stage inquiries for the Court to resolve in the first instance.

When the case returned on remand from the Sixth Circuit, the parties undertook efforts at mediation, which did not ultimately result in a resolution. In the meantime, Plaintiff refiled his State-law claims in State court on behalf of a class, and Defendants removed that action on the basis of federal preemption. Also, Defendants moved to dismiss that lawsuit or, in the alternative, to strike the class allegations. For his part, Plaintiff moved to remand the case to State court.

In this ruling, the Court attempts to cut through this procedural tangle in these two lawsuits, which began as one. First, the Court addresses the tasks the Sixth Circuit left at the pleading stage regarding the ERISA claims Plaintiff asserts. Second, the Court turns to Plaintiff's second lawsuit, initially filed in State court, and the parties' competing motions directed at it.

## STATEMENT OF THE FACTS

On Defendants' motion to dismiss, the Court takes the facts alleged in the complaint as true and takes judicial notice of State-court opinions and proceedings mentioned in the complaint, without converting this motion into one for summary

judgment.  *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

### A.     Eric Patterson's Case in State Court

In November 2014, Mr. Patterson was injured in a motor vehicle accident. (ECF No. 1, ¶ 30, PageID #16.)  He had health insurance through his employer, Swagelok Company.  (*Id.*, ¶ 11, PageID #9.)  United Healthcare, an umbrella term for a group of affiliated companies, administered the plan.  (*Id.*, ¶ 12, PageID #10.)  After the accident, United Healthcare paid for Mr. Patterson's medical treatment.  (*Id.*, ¶ 31, PageID #16.)  Mr. Patterson also submitted a claim for compensation to the insurer of the other vehicle.  (*Id.*, ¶ 30, PageID #16.)

United Healthcare's agent and subsidiary, Optum, notified Mr. Patterson that it would invoke the plan's rights to subrogation and reimbursement should he recover from the insurer of the other driver.  (*Id.*, ¶ 31, PageID #16.)  A summary plan description that United Healthcare provided to Mr. Patterson noted these subrogation and reimbursement rights.  (*Id.*, ¶¶ 27–28, PageID #14–15.)  By its terms, the summary plan description serves only as a summary, and any inconsistent language in the plan document supersedes it.  (*Id.*, ¶ 27, PageID #14.)  United Healthcare did not provide Mr. Patterson with any plan documents—only the summary plan description.

In November 2016, Mr. Patterson and his wife, Laura Patterson, sued the other insurer for compensatory damages in State court.  (*Id.*, ¶ 32, PageID #16; *Patterson v. Nationwide Truck Brokers, Inc.*, No. CV-2016-11-4906 (Summit Cnty. C.P. filed Nov. 18, 2016).)  In the same suit, Mr. Patterson joined a claim against his

insurance plan and United Healthcare seeking a declaratory judgment regarding the subrogation and reimbursement rights in his contract. (ECF No. 1, ¶ 32, PageID #16.) Throughout the proceedings in State court, United Healthcare's attorneys maintained that no plan document existed, just the summary plan description. (*Id.*, ¶ 34, PageID #17–21.)

In June 2017, Mr. Patterson settled with the plan, agreeing to pay Optum $25,000 in satisfaction of the plan's subrogation and reimbursement rights. (*Id.*, ¶ 35, PageID #21.)

## B. Laura Patterson's Case in State Court

In July 2015, months after Eric Patterson's accident, Laura Patterson suffered injuries in a motor vehicle accident. (*Id.*, ¶ 36, PageID #22.) Ms. Patterson was covered under the same health insurance plan, was also contacted by Optum regarding its subrogation and reimbursement rights, and in June 2017 also sued in State court for a declaratory judgment against the plan to determine its subrogation and reimbursement rights. (*Id.*, ¶¶ 36–38, PageID #21–22.) Initially, the defendants relied on the same summary plan description and again claimed that no other plan document existed. (*Id.*, ¶ 39, PageID #22.) In February 2018, however, the defendants produced a plan document "for the first time." (*Id.*, ¶ 49, PageID #28.) Like the summary plan description, the plan document stated that, in the event of a discrepancy, the plan document—and not the summary plan description—controls. (ECF No. 1-1, PageID #99.) Unlike the summary plan description, the plan document did not contain a subrogation or reimbursement provision. (ECF No. 1-1; ECF No. 1, ¶ 49, PageID #28.)

4

After production of the plan document, the State court entered summary judgment in favor of Ms. Patterson against the plan, holding that she was not contractually obligated to reimburse the plan for any medical benefits it paid on her behalf.  (ECF No. 1, ¶ 52, PageID #29.)

## STATEMENT OF THE CASE

In March 2020, Ms. Patterson sued United Healthcare, Optum, Swagelok, and their lawyers in federal court, bringing claims under the Employee Retirement Income Security Act of 1974, the Fair Debt Collection Practices Act, and State law. (*Patterson v. Swagelok Co.*, No. 1:20-cv-566, ECF No. 1 (N.D. Ohio Mar. 17, 2020).)  A year later, Mr. Patterson sued the same defendants (including an additional Optum entity and naming individual lawyers as defendants), bringing claims under ERISA and State law.  (ECF No. 1.)  Although these separate lawsuits involved the same plan, the same claims and issues, and the same counsel, no party in either lawsuit notified the Court of the other case's existence or identified it as a related case.

In this ruling, the Court addresses this second lawsuit, which now has two parts.

### A.    Dismissal and Re-Filing of the State-Law Claims

In March 2021, Defendants moved to dismiss the complaint for failure to state a claim and for lack of subject-matter jurisdiction.  (ECF No. 11.)  While the motion to dismiss was pending, Plaintiff moved for leave to amend his complaint to add class allegations, narrow the factual allegations, and drop certain Defendants and claims. (ECF No. 35.)  In January 2022, the Court granted Defendants' motion to dismiss the federal claims, declined to exercise supplemental jurisdiction over Plaintiff's State-

law claims, and denied as futile Plaintiff's motion for leave to amend.  (ECF No. 39.)
Plaintiff appealed.  (ECF No. 41.)

Plaintiff re-filed his State-law claims on behalf of a class against United
Healthcare, Optum, and Swagelok in State court.  (*See Patterson v. UnitedHealth
Grp., Inc.*, No. 1:23-cv-378, ECF No. 1 (N.D. Ohio Feb. 24, 2023).)  Defendants
removed this action to federal court and then moved to dismiss the complaint or, in
the alternative, to strike its class allegations.  (*Patterson*, No. 1:23-cv-378, ECF No. 5
(Mar. 3, 2023).)  Plaintiff moved to remand the case to State court.  (*Patterson*,
No. 1:23-cv-378, ECF No. 9 (Mar. 24, 2023).)

## B.    Remand from the Sixth Circuit

In August 2023, the Sixth Circuit largely affirmed.  *See Patterson v. United
Healthcare Ins. Co.*, 76 F.4th 487 (6th Cir. 2023).  The court held that Mr. Patterson
had standing to sue only for the $25,000 that he paid to Optum in settlement of his
claims in his suit against the other driver and not for injunctive relief or any other
injuries alleged in his complaint.  *Id*. at 493–94.  As to the merits, the Sixth Circuit
held that ERISA countenances claims for equitable relief (namely, return of the
$25,000 Mr. Patterson paid in the original State-court litigation) for breach of
fiduciary duty and prohibited transactions.   *Id*. at 495–96; *see* 29 U.S.C.
§ 1132(a)(3)(B).  However, the Sixth Circuit foreclosed other "appropriate relief under
section 1109" of ERISA to remedy harm to the plan itself.  *Patterson*, 76 F.4th at 498
(quoting 29 U.S.C. § 1132(a)(2)).  Finally, the court affirmed denial of leave to amend
to add class action allegations, agreeing that the proposed amendment was futile.  *Id*.
at 500.  This disposition leaves Mr. Patterson to pursue his individual claims under

Section 1132(a)(3) against United Healthcare and Optum for breach of fiduciary duty and prohibited transactions, with relief limited to the return of his $25,000.

On remand, the Sixth Circuit left several issues for the Court to decide. First, the Court must decide whether Plaintiff's complaint states a claim under either theory.

> As an alternative basis for dismissing both of Patterson's claims, defendants renew the argument they made below—that the complaint's facts do not state a claim for breach of fiduciary duty or prohibited transactions. The district court did not address the issue because it was not necessary to do so. By and large, then, we leave it to the district court to take up the argument in the first instance[.]

*Id.* at 499. This pleading-stage inquiry includes determining whether Rule 9(b)'s heightened standard governs Plaintiff's claims and, if so, whether the complaint meets it. *Id.* Because the Sixth Circuit ruled that the facts do not support claims against the other defendants, this claim now relates only to United Healthcare and Optum. *Id.* at 499–500.

Second, the Court must determine whether Optum was acting in a fiduciary capacity when it entered into the settlement agreement with Mr. Patterson. *Id.* at 497. "[W]e leave it to the district court to conduct in the first instance the 'granular' inquiry of whether Optum was acting as a fiduciary at the relevant time." *Id.* (citing *Chelf v. Prudential Ins. Co. of America*, 31 F.4th 459, 464–65 (6th Cir. 2022)).

## ANALYSIS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes the complaint in the light most favorable to the plaintiff, accepts the well-pled factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.  *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 760 (6th Cir. 2024) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).  The Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not.  *Iqbal*, 556 U.S. at 628.  The Court also will not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations."  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## I.  Motion to Dismiss ERISA Claims (No. 1:21-cv-470)

Before turning to the merits of Defendants' motion to dismiss on remand, the Court starts with the direction from the Sixth Circuit to determine whether the heightened pleading standard of Rule 9(b) applies.  Rule 9(b) subjects certain claims to a heightened pleading standard.  "In alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* On this record, it is not necessary to reach the question whether Rule 9(b) applies to Plaintiff's claims. Assuming that the Rule does apply, Plaintiff's complaint satisfies its requirements.

### I.A.    Rule 9(b)

Generally, where it applies, Rule 9(b) requires a complaint to state the "who, what, when, where, and how" of an alleged fraud, mistake, or omission. *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (quoting *Sanderson v. HCA—The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). More specifically, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, [] (4) explain why the statements were fraudulent," and (5) "describe the fraudulent scheme and the resulting injury." *Id.* at 614–15 (quoting *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022)). The purpose of these requirements is to "put defendants on notice as to the nature of the claim." *Id.* at 615 (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)).

The Court examines each requirement in turn.

### I.A.1. Who, What, When, and Where

The complaint describes specific statements that allegedly misrepresented the plan's contractual subrogation and reimbursement rights and the existence of the plan document itself. It provides five examples of such statements made during the

9

proceedings in Mr. Patterson's declaratory judgment action, reproducing their contents verbatim:  one from the plan's answer and counterclaim, three from the plan's response to discovery requests, and one from the plan's mediation statement. (ECF No. 1, ¶ 34, PageID #17–21.)  In its answer and counterclaim, the plan asserted that the summary plan description was a "true and accurate copy of the Plan" and that "Section 11 of the Plan provides for subrogation and reimbursement."  (*Id.*, ¶ 34, PageID #17.)  In its responses to discovery requests, the plan repeatedly represented that the summary plan description was the plan document, that there was no other plan document, and that the summary plan description created a subrogation and reimbursement right.  (*Id.*, ¶ 34, PageID # 17–21.)  And in its mediation statement, the plan again attached only the summary plan description as "relevant contract language" to support its claims.  (*Id.*, ¶ 34, PageID #21.)

These allegations sufficiently specify the statements at issue.  *See Greer*, 114 F.4th at 614.  Because Defendants made these statements through counsel in litigation in State court, the complaint sufficiently identifies who the speakers are and states where and when the statements were made.  *Cf. id.* at 615.

### I.A.2. Why

According to the complaint, in the separate declaratory judgment actions that Mr. Patterson and Ms. Patterson brought in State court, Defendants claimed that the summary plan description governed the right to reimbursement, not the plan document because no such document existed.  Notwithstanding these representations, Defendants eventually produced a plan document in Ms. Patterson's case.  Allegedly, the plan document contradicts Defendants' claims about its

10

nonexistence and their claimed contractual right to reimbursement.  Plaintiff contends that the plan document also existed at the time of his State case and was negligently, recklessly, or knowingly withheld to induce his payment to Optum.  (*Id.*, ¶ 68, PageID #33–37.)

Whether Plaintiff can prove this allegation remains to be seen.  At the pleading stage, however, the Court draws all reasonable inferences in his favor.  *Kerchen*, 100 F.4th at 760.  Accepting all of Plaintiff's factual allegations as true, and construing them in his favor as the Court must in the present procedural posture, the complaint gives rise to an inference that Defendants knew or should have known that their representations about the plan document and the summary plan description were false.

### I.A.3. How

In light of the above, "the complaint's theory of liability is clear." *City of Taylor Gen. Emp. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 812.  By omitting or concealing the plan document, Defendants allegedly used the summary plan description to convince Plaintiff that his contract contained a clause providing for subrogation and reimbursement when it did not.  Based on that mistaken belief, Plaintiff settled with Defendants and suffered a monetary loss of $25,000.

\*     \*     \*

Because it clearly identifies the "who," "what," "when," "where," "why," and "how" of the statements at issue, the complaint complies with the requirements of Rule 9(b), whether the law obligates Plaintiff to do so or not.  *See id.* at 812–13.

### I.B.    Substantive ERISA Claims

To determine whether the complaint adequately states a claim for breach of fiduciary duty under ERISA, the Court considers two questions:  first, whether Defendants were ERISA fiduciaries; and, second, whether their alleged actions amounted to a breach.  *Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Mich.*, 722 F.3d 861, 865 (6th Cir. 2013).

### I.B.1. ERISA Fiduciaries

Defendants contend that no breach could have occurred because Optum, a wholly owned subsidiary of United Healthcare Services, itself a wholly owned subsidiary of UnitedHealth Group, was not acting in a fiduciary capacity when it entered into the settlement agreement with Mr. Patterson.  Defendants characterize the settlement negotiations as an arms-length transaction that did not implicate a fiduciary relationship with Plaintiff.

### I.B.1.a. Named Fiduciary

ERISA defines a fiduciary more broadly than the common-law definition, and it does not turn on formal designations like trustee status.  *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).  Three methods of acquiring ERISA fiduciary status are potentially relevant here.  First, a "named" fiduciary is one who is identified as such in the plan instrument or by a procedure specified in the plan.  29 U.S.C § 1102(a)(2).  The plan names Mr. Patterson's employer, Swagelok, as a fiduciary (ECF No. 1-1, PageID #76)—not either remaining Defendant.

### I.B.1.b. Authority or Control

Second, an entity becomes an ERISA fiduciary to the extent that it exercises "any authority or control" over the plan's assets.  29 U.S.C. § 1002(21)(A)(i).  This form of fiduciary responsibility may persist even after a formal relationship with the plan and its participants has terminated, if the entity continues to control plan assets. *Briscoe v. Fine*, 444 F.3d 478, 491–92 (6th Cir. 2006); *Smith*, 170 F.3d at 612–13. Mere possession or custody is insufficient, but the authority to write checks on and deposit payments into plan accounts supports a finding that an entity has control over plan assets.  *Briscoe*, 444 F.3d at 493–94; *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012).  At the pleading stage, Plaintiff has alleged facts making it plausible that Optum acted as a fiduciary under this definition.  That remains to be proved, but the complaint supports at least an inference that Optum controlled plan assets by undertaking to settle claims affecting the plan and bringing funds into it.  Of course, discovery may show that Optum only had possession of the funds.  But at the pleading stage, Plaintiff states a claim under this theory.

### I.B.1.c. Functional Fiduciary

Third, where an entity exercises discretion while performing fiduciary functions, it may be a functional fiduciary.  An entity is a functional fiduciary "to the extent" that it exercises discretionary authority or control over the plan's management, 29 U.S.C. § 1002(21)(A)(i), or has discretionary responsibility in the administration of the plan, *id*. § 1002(21)(A)(iii).  This definition includes third parties designated by named fiduciaries to carry out fiduciary responsibilities.  *Id*.

13

§§ 1002(A), 1105(c)(1)(B); *see also* ECF No. 1-1, PageID #89 ("A third party to whom duties are delegated shall be a fiduciary to the extent of its discretion.").

To have fiduciary status under ERISA, the third-party administrator's duties must be more than "purely ministerial." *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991). Courts find no discretion—and, therefore, no fiduciary status—where specific contract terms dictate a third-party administrator's behavior. *See, e.g., McLemore v. Regions Bank*, 682 F.3d 414, 424 (6th Cir. 2012) (holding that a bank was not liable as a fiduciary under ERISA when collecting "routine contractual fees"); *Seaway Food Town, Inc. v. Medical Mut. of Ohio*, 347 F.3d 610, 616, 619 (6th Cir. 2003) (holding that a third-party claims processor obeying a contract term that gave it a unilateral right to retain funds as compensation was not a fiduciary where it merely applied plan rules in processing claims and the employer retained final authority to deny claims).

However, an entity can be an ERISA fiduciary even where it acts according to a contract or other obligation if it exercises discretionary authority or control. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 744, 748 (6th Cir. 2014) (holding that discretion existed where a third-party contract permitted but did not compel collection of certain fees); *Pipefitters*, 722 F.3d at 867 (holding that discretion existed where a State commissioner required payment but did not prescribe the method of raising funds to do so). "No discretion is exercised when an insurer merely adheres to a specific contract term. When a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of

14

the arm's length bargain, the insurer may be a fiduciary." *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 318 (1st Cir. 2023) (quoting *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 737 (7th Cir. 1986)).

The issue of functional fiduciary status is granular and context specific. *Pipefitters*, 722 F.3d at 866. Courts ask whether an entity is a fiduciary "with respect to the particular activity in question." *Id.* (quoting *Briscoe*, 444 F.3d at 486). In other words, the same entity may be an ERISA fiduciary while engaging in one activity but not another. The question is whether the entity "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Here, the allegations of the complaint give rise at least to an inference that Optum exercised discretionary management and responsibilities within the meaning of ERISA in deciding whether to resolve a claim and on what terms. The granular and fact-specific inquiry into whether Optum acted as a functional fiduciary requires further discovery. On Defendants' motion to dismiss, the Court cannot say as a matter of law that Optum is not a functional fiduciary.

### I.B.2. Prohibited Transactions and Breach of Fiduciary Duty

That leaves the question whether the complaint states a claim for breach of the two substantive ERISA duties at issue under Section 1132(a)(3): (1) the general fiduciary duty under 29 U.S.C. § 1104, and (2) the duty not to engage in certain prohibited transactions under 29 U.S.C. § 1106(b)(1). *See Patterson*, 76 F.4th at 495–96 (characterizing Plaintiff's claims).

The Sixth Circuit holds that an ERISA fiduciary that violates Section 1106(b)(1) by "us[ing] a plan's funds for its own purposes" also violates Section 1104, because the fiduciary duties of loyalty and care "necessarily" forbid such conduct. *Pipefitters*, 722 F.3d at 868–69. Therefore, the Court first considers Mr. Patterson's claim for prohibited transactions before turning to the "undeniably broader" claim of breach of fiduciary duty. *See id.*

### I.B.2.a. Prohibited Transactions (Section 1106(b))

ERISA contains an "absolute bar against self[-]dealing." *Pipefitters*, 722 F.3d at 868 (quoting *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988)). An ERISA fiduciary must not "deal with the assets of the plan in [its] own interest or for [its] own account." 29 U.S.C. § 1106(b)(1). When not authorized by the contract between the plan and the fiduciary, transactions implicating Section 1106(b)(1) include the retention of additional revenue by adding mark-ups to claims, *Hi-Lex*, 751 F.3d at 743, 750, passing through only part of a negotiated discount, *Pipefitters*, 722 F.3d at 864, 868, or commingling funds, *Guyan*, 689 F.3d at 796–97.

Plaintiff alleges that Defendants violated this statutory prohibition by using plan assets to fund illegitimate collection efforts for their own benefit. (ECF No. 1, ¶¶ 96–103, PageID #42–45.) Specifically, the complaint alleges that Defendants retained at least some of the money collected for themselves rather than depositing it into the plan fund (*id.*, ¶ 97, PageID #43), received fees for the collection efforts (*id.*, ¶ 98, PageID #43), and paid for the collection efforts with plan funds (*id.*, ¶ 100, PageID # 43–44).

16

Taking these allegations as true, and construing them in Plaintiff's favor, the Court cannot say at the pleading stage that this claim fails as a matter of law. Defendants' argument that 29 U.S.C. § 1108(2)(b) exempts fees and costs of collection efforts from the prohibition against self-dealing fails in the face of the law of this Circuit.  Like the Department of Labor and most courts that have considered the question, the Sixth Circuit applies Section 1108 only to transactions under Section 1106(a), not Section 1106(b).  *Hi-Lex*, 751 F.3d at 750–51.  And, as discussed in more detail below, Defendants' arguments regarding the ordinariness of service fees do not address or excuse the complaint's allegations of misrepresentation.

Accordingly, the Court concludes that the complaint states a claim under Section 1106(b).  Under Sixth Circuit precedent, this conclusion necessarily implies a breach of fiduciary duty as well.  *Pipefitters*, 722 F.3d at 868–69.  Even on its own terms, however, the Court determines that the complaint plausibly states an independent claim for breach of fiduciary duty.  Therefore, the Court goes on to conduct a separate analysis under Section 1104.

### I.B.2.b. Breach of Fiduciary Duty (Section 1104)

In addition to the prohibition against self-dealing, ERISA also requires fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).  This broad fiduciary duty involves three components:  (1) a duty of loyalty, (2) a duty of prudence, and (3) a duty to act exclusively for the benefit of plan participants.  *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002) (citing *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)).  Together, these obligations create an "unwavering

17

duty . . . to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Id.* at 449 (quoting *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988)).

A fiduciary breaches this duty if it gives materially misleading information to plan participants, "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James*, 305 F.3d at 449 (quoting *Krohn*, 173 F.3d at 547). "Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [Section 1104]." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (cleaned up). A misrepresentation is material if there is a "substantial likelihood that it would mislead a reasonable employee" in making an "adequately informed decision" about his entitlements under the plan. *See James*, 305 F.3d at 449; *Krohn*, 173 F.3d at 547. A material misrepresentation is a breach of fiduciary duty whether made on the fiduciary's own initiative, *James*, 305 F.3d at 455, or at the request of a beneficiary, *Krohn*, 173 F.3d at 547–49.

Plaintiff claims that Defendants breached their fiduciary duty to Plaintiff under 29 U.S.C. § 1104(a) when they did not produce the plan in litigation, stated that the plan document did not exist, and collected money from Plaintiff on the basis of a reimbursement right for which the plan did not actually provide. (ECF No. 1, ¶ 68, PageID #33–37.) At the pleading stage, these allegations state a claim.

Defendants argue that reimbursement provisions are beneficial and not wasteful for insurance plans. But this argument misses the point. The decision to

18

include—or not to include—a subrogation or reimbursement right might be a nonfiduciary business decision.  Once Defendants make their choice, however, they may not misrepresent that choice to plan participants.  *Berlin*, 858 F.2d at 1163 (recognizing that, though plan administrators' "corporate actions" might themselves be nonfiduciary, "misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty").  Put simply, "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'"  *Varity*, 516 U.S. at 506.  Plaintiff alleges as much here.

## II.     Class Action Removed from State Court (No. 1:23-cv-378)

When the Court granted Defendants' motion to dismiss, it declined to exercise supplemental jurisdiction over Plaintiff's State-law claims.  That disposition creates some procedural complications with respect to Plaintiff's second lawsuit, which raises those State-law claims and has been removed to federal court.  Absent the dismissal of Plaintiff's first lawsuit (No. 1:21-cv-470), the Court would have considered Defendants' motion to dismiss these State-law claims in that lawsuit without the need for the filing of a second one.  Accordingly, the Court begins by addressing the formality that two separate lawsuits involving the same transaction or occurrence are now pending.

## II.A.  Separate Lawsuits

An appellate court's remand can be either limited or general, and its scope governs the district court's authority on remand. *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021) (citing *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)).  A limited remand sets forth an "explicit limitation" or procedure that constrains the district court's authority "to the issue or issues specifically articulated in the appellate court's order." *Id.* (citing *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)).  On general remand, however, a district court "is free to address all matters as long as it remains consistent with the appellate court's opinion." *Id.* (citing *Moore*, 131 F.3d at 597).

The Sixth Circuit issued a general remand in this case, reversing the Court's dismissal of Plaintiff's claims for breach of fiduciary duty and engagement in prohibited transactions against United Healthcare and Optum under Section 1132(a)(3) but affirming "the remainder of its decision" and returning the case to the Court for proceedings consistent with that outcome. *See Patterson*, 76 F.4th at 500. Accordingly, the Court's previous declination of jurisdiction over Plaintiff's State-law claims stands unchanged after appeal, and those original State-law claims remain dismissed without prejudice in the original lawsuit (Case No. 1:21-cv-470).

While his appeal was pending before the Sixth Circuit, Plaintiff filed a class-action complaint against United Healthcare, Optum, and Swagelok in State court. (No. 1:23-cv-378, ECF No. 1-1.)  That complaint brought claims for fraud and misrepresentation, conversion, civil conspiracy, and unjust enrichment.  In February 2023, Defendants removed that case to federal court on the basis of ERISA

preemption. (No. 1:23-cv-378, ECF No. 1.) Defendants moved to dismiss or, in the alternative, to strike the class allegations (No. 1:23-cv-378, ECF No. 5.), and Plaintiff moved to remand the case to State court (No. 1:23-cv-378, ECF No. 9). All of these filings in the removed case occurred before the Sixth Circuit's remand of Plaintiff's federal ERISA claims.

### II.B.  Motion to Remand

Because it is jurisdictional, the Court first considers Plaintiff's motion to remand the removed case. (No. 1:23-cv-378, ECF No. 9.) In their notice of removal and in their motion to dismiss, Defendants argue that removal is proper because ERISA completely preempts these State-law claims, providing a basis for federal jurisdiction. Plaintiff disagrees.

Federal courts have limited jurisdiction. To remove a case to federal court, the removing party must establish that a federal court has original jurisdiction. 28 U.S.C. §§ 1441 & 1446. Federal courts have original jurisdiction over cases that "aris[e] under" federal law. *Id.*, § 1331. To determine whether a case arises under federal law, courts generally look to the face of the plaintiff's complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *see also Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 152 (1908). "After all, the general rule says the plaintiff is the master of her complaint and gets to choose where and how to sue." *K.B. ex rel. Qassis v. Methodist Healthcare-Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). "[U]nder the ordinary test for federal jurisdiction," a complaint based only on State law "stays where it

started—in [S]tate court."  *Id.*   In particular, the existence of a federal defense normally does not create federal jurisdiction.  *Davila*, 542 U.S. at 207.

However, a federal statute that "wholly displaces the [S]tate-law cause of action through complete preemption" presents an exception to the general rule.  *Weil v. Process Equip. Co. of Tipp City*, 879 F. Supp. 2d 745, 748 (S.D. Ohio 2012) (quoting *Davila*, 542 U.S. at 207).  "Complete preemption is jurisdictional and is 'reserved for statutes designed to occupy the regulatory field with respect to a particular subject and to create a superseding cause of action.'"  *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709 (M.D. Tenn. 2021) (quoting *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005)) (cleaned up).  Where there is complete federal preemption of a State-law cause of action, a claim falling under that cause of action "is in reality based on federal law," even if pleaded in terms of State law.  *Davila,* 542 U.S. at 208 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

Complete preemption provides a very limited exception to the well-pleaded complaint rule and is only applied "when the federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable[.]"  *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005).  Few statutes completely preempt State law, but ERISA is one.  *K.B.*, 929 F.3d at 799 (citing *Davila*, 542 U.S. at 207–08).  To ensure uniform enforcement, ERISA provides an exhaustive list of "remedies [and] sanctions" that are available to plan participants, beneficiaries, and fiduciaries in

22

federal court. *Davila*, 542 U.S. at 208 (citing 29 U.S.C. § 1001(b)). Indeed, courts describe ERISA's preemption clause as "one of the broadest ever enacted by Congress." *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) (citation omitted). "ERISA is a statute unique in its preemptive effect," with a scope "among the broadest, if not the broadest, recognized by the Supreme Court." *Sherfel v. Newson*, 768 F.3d 561, 564 (6th Cir. 2014).

Although ERISA preemption sweeps broadly, courts construe removal statutes against the party seeking removal. "[I]n the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the [S]tate courts." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). In *Davila*, the Supreme Court articulated a two-prong test to determine whether ERISA completely preempts a State-law claim such that it supports removal. 542 U.S. at 210. ERISA completely preempts a State-law claim if (1) a plaintiff "could have brought his claim under [29 U.S.C. § 1132(a)(1)(B)]," and (2) there is "no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. A duty is independent where it is "not derived from, or conditioned upon, the terms of the plan and there is no need to interpret the plan to determine whether that duty exists." *Milby v. MCMC LLC*, 844 F.3d 605, 611 (6th Cir. 2016) (cleaned up).

As an initial matter, the Court notes that the Sixth Circuit already determined that Plaintiff has standing to assert certain claims under ERISA. Because Plaintiff

23

has standing to assert the claims discussed above under ERISA, his State-law claims may be subject to recharacterization, and the Court proceeds to consider whether ERISA completely preempts the State-law claims brought in the removed case.

### II.B.1. Complete Preemption Under Section 1132(a)(3)

As originally pled, Plaintiff's federal case sought relief under three of ERISA's civil enforcement provisions:  Sections 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3).  These statutes variously provide for civil enforcement as follows:

(a)    PERSONS EMPOWERED TO BRING A CIVIL ACTION

A civil action may be brought—

> (1)    by a participant or beneficiary—
>
>> (A)    for the relief provided for in subsection (c) of this section, or
>>
>> (B)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2)    by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132.  Plaintiff also brought State-law claims for breach of fiduciary duty, fraud and fraudulent/negligent misrepresentation, conversion, civil conspiracy, and unjust enrichment.

In their motion to dismiss, Defendants argued that ERISA completely preempted Plaintiff's State-law claims.  The Court determined that Plaintiff failed to

24

state a claim under any of the three ERISA provisions and declined to exercise supplemental jurisdiction over the State-law claims.  On appeal, Plaintiff waived reliance on Section 1132(a)(1)(B), and the Sixth Circuit affirmed the Court's determination that Plaintiff did not have a cognizable claim under Section 1132(a)(2).  Accordingly, Plaintiff's federal case returns to the Court with claims under Section 1132(a)(3) only.

Plaintiff and Defendants agree that there is no binding precedent establishing whether Section 1132(a)(3) can provide a basis for complete preemption.  Although *Davila* referenced only Section 1132(a)(1)(B), the Sixth Circuit extends complete preemption to Section 1132(a)(2) because there is "little reason to distinguish between the two provisions."  *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).  Similarly, the Court does not see on the face of the statute—and Plaintiff does not suggest—a reason to distinguish Section 1132(a)(3) from Sections 1132(a)(2) and 1132(a)(1)(B) for the purposes of complete preemption.  Although Section 1132(a)(3) has a more limited remedial reach than the other subsections of the statute, authorizing a participant or beneficiary to recover equitable relief, it does not appear to differ materially from Section 1132(a)(2), which provides for "appropriate relief" for breach of a fiduciary duty.

In explaining the basis of complete preemption under ERISA, the Supreme Court cites congressional intent regarding "the civil enforcement provisions of § 502(a)" in general, not any singular provision.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *see also* 29 U.S.C. § 1132(e), (f).  Also, the Sixth Circuit refers

25

to these provisions collectively when describing ERISA preemption.  *See, e.g.*, *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016).  Therefore, the Court joins others in holding that Section 1132(a)(3) may completely preempt a State-law claim.  *See, e.g.*, *Kalo v. Moen Inc.*, 93 F. Supp. 2d 869, 872–73 (N.D. Ohio 2000) (collecting cases); *C.C. Mid West, Inc. v. McDougall*, 990 F. Supp. 914, 920 (E.D. Mich. 1998).

Plaintiff argues that Section 1132(a)(3) does not completely preempt his State-law claims because it provides only equitable relief and his State-law claims seek legal remedies.  Defendants agree that Plaintiff's requested remedies are unavailable under Section 1132(a)(3).  However, Defendants argue that ERISA can completely preempt claims for which it does not provide a remedy, analogizing to a case in which the Sixth Circuit found a negligence per se claim completely preempted by ERISA but nonetheless subject to dismissal because the defendant was not proper under Section 1132(a).  *See Hogan*, 823 F.3d at 884.

"[I]t is the nature of the claim . . . that determines whether ERISA applies, not whether the claim will succeed."  *Smith*, 170 F.3d at 609.  "[I]t does not matter . . . whether the relief that plaintiffs seek is different from the relief that ERISA affords."  *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 588 (6th Cir. 2006).  Indeed, under the separate but related doctrine of express preemption, the Supreme Court invalidated a State tort that, while "duplicat[ing] the elements of a claim available under ERISA[,] converted the remedy from an equitable one under § 1132(a)(3) . . . into a legal one for money damages."  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002) (describing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)).

26

Similarly, complete preemption prevents a plaintiff from using State-law labels for his claims to "obtain[] remedies that Congress has chosen not to make available under ERISA." *Smith*, 170 F.3d at 615. As a part of ERISA's "careful balancing," *Davila*, 542 U.S. at 208 (quotation omitted), Section 1132(a) allows a plan "participant [or] beneficiary," like Plaintiff, to redress violations of ERISA or of the plan's terms while limiting relief to equitable remedies. Therefore, claims seeking to redress a violation of ERISA or of the plan's terms under Section 1132(a)(3) do not survive complete preemption merely because Plaintiff asserts State-law causes of action that permit legal remedies.

Against that legal background, the Court turns to consider whether ERISA completely preempts each of the specific State-law claims Plaintiff asserts.

### II.B.1.a. Fraud and Misrepresentation

Count 1 of the complaint in the removed case alleges that Swagelok, United Healthcare, and Optum represented that the plan gave them subrogation and reimbursement rights, even though they knew or should have known that the plan did not, and that they induced payments through that misrepresentation. These facts are materially indistinguishable from the ones supporting Plaintiff's ERISA claims. Certainly, Plaintiff could have brought this claim under Section 502(a)(3); in fact, as discussed above, Plaintiff's Section 502(a)(3) claim against United Healthcare and Optum survives dismissal under Rule 12—his claim against Swagelok does not. *See Patterson*, 76 F.4th at 499.

And Defendants' duty toward Plaintiff arises from the ERISA plan. This is not a case in which a defendant tortiously interfered with a contract that just so happened

27

to be an ERISA plan.  *Cf. Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 611–12 (6th Cir. 2013).  Nor is the ERISA plan simply one piece of negotiations over a separate, independent contract between a non-participant and a potential future employer.  *Cf. Thurman v. Pfizer, Inc.*, 484 F.3d 855, 862 (6th Cir. 2007).  Instead, this dispute regarding the duties of honesty and disclosure between a plan administrator and a plan beneficiary falls soundly within the ERISA fiduciary relationship.  "[T]hose who are already participants or beneficiaries under an ERISA plan when a misrepresentation is made must . . . bring a claim for breach of fiduciary duty under § 1132."  *Id.*, 484 F.3d at 864.

### II.B.1.b. Conversion and Unjust Enrichment

Counts 2 and 4 of the complaint raise claims for conversion and unjust enrichment, respectively.  These claims, which rely on the same facts to allege that Defendants inappropriately collected funds from Plaintiff, "likewise overlap[] with [Plaintiff's ERISA] claim for breach of fiduciary duty."  *Briscoe v. Fine*, 444 F.3d 478, 500 (6th Cir. 2006).  Moreover, Plaintiff's prohibited transactions claim under ERISA, which alleges that plan assets inappropriately funded unlawful collection efforts, lends an additional layer of overlap.  "[R]emedies for a party's role in the misallocation of plan assets lie under ERISA."  *Id.*, 444 F.3d at 500–01.

### II.B.1.c. Civil Conspiracy

Finally, Count 3 asserts a claim for civil conspiracy on the theory that Defendants' actions "were malicious and combined to carry out" a fraudulent scheme. (No. 1:23-cv-378, ECF No. 1-1, PageID #25–26.)  "Ohio law does not recognize civil conspiracy as an independent cause of action."  *Addison Holdings, LLC v. Fox, Byrd,*

*& Co., P.C.*, 2022-Ohio-4784, 203 N.E.3d 1259, ¶ 100 (Ohio Ct. App.).  Instead, civil conspiracy requires an "underlying unlawful act."  *Id.* (citing *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859).  Here, any underlying unlawful act arises in the context of an ERISA fiduciary relationship and is too deeply enmeshed with that relationship to tease out or stand alone.  Because ERISA completely preempts the underlying causes of action for fraud, so too does it preempt this claim for civil conspiracy to commit that fraud.

*  *  *

In summary, the removed case "is not an action raising [S]tate law claims that only tenuously, remotely, or peripherally relate to an ERISA plan."  *Central States, Southeast & Southwest Areas Pension Fund v. Mahoning Nat'l Bank*¸ 112 F.3d 252, 256 (6th Cir. 1997).  ERISA completely preempts each of the State-law claims in the removed case.

### II.B.2. Recasting the State-Law Claims as ERISA Claims

Where ERISA completely preempts a State-law claim, a court may either direct the plaintiff to re-plead federal claims or recast the State-law claim as one brought under ERISA in which the plaintiff has already had an opportunity to amend.  *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016).  Here, both Plaintiff's original federal complaint and the complaint in the removed case essentially seek the same outcome on the basis of the same alleged facts:  a return of the $25,000 paid under the subrogation and reimbursement provisions of an allegedly non-existent plan.  Because ERISA completely preempts the State-law claims, the two lawsuits

29

effectively assert overlapping ERISA claims, making the second lawsuit duplicative of the first.

As for the class allegations accompanying the State-law causes of action alleged in the removed case, the Sixth Circuit determined that claims "on behalf of a putative class would not survive a motion to dismiss."  *Patterson*, 76 F.4th at 500 (citing *Doe v. Michigan State Univ.*, 989 F.3d 418, 424–25 (6th Cir. 2021)); *see also id.* at 493.  Therefore, when re-cast as claims under ERISA, these class allegations cannot survive.  In sum, complete ERISA preemption of Plaintiff's State-law claims disposes of the removed action in its entirety:  the re-cast causes of action become the same as those before the Court on remand in the original federal action and the class allegations in the removed case do not survive.   Because Plaintiff already asserts ERISA claims, there is no need for amendment, which would result in restating the State-law claims as ERISA claims already asserted.  Therefore, the Court dismisses this second lawsuit.

## CONCLUSION

For all the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand the removed case to State court (No. 1:23-cv-378, ECF No. 9) and **GRANTS** Defendants' motion to dismiss it (No. 1:23-cv-378, ECF No. 5).

In Case No. 1:21-cv-470, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss (ECF No. 11).  In that case, Plaintiff may proceed against Optum and the United Healthcare Defendants under Section

§ 1132(a)(3) for prohibited transactions and breach of fiduciary duty on behalf of himself, not a class, as the Court previously ruled.

      **SO ORDERED.**

Dated:  January 9, 2025

_____
      J. Philip Calabrese
      United States District Judge
      Northern District of Ohio