## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURA L. PATTERSON, | ) | Case No. 1:20-cv-566 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| SWAGELOK COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ERIC L. PATTERSON, | ) | Case No. 1:21-cv-470 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| UNITEDHEALTH GROUP, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Eric and Laura Patterson seek discovery from Defendant Kreiner &

Peters, which objected to virtually all discovery requests based on claims of privilege

and work-product protections.  The parties dispute whether, and to what extent, each

applies and have reached impasse on the issue, prompting the Court's intervention

and resolution of this discovery dispute.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

By way of background, Plaintiff Eric Patterson brings claims against Optum

and the United Healthcare Defendants under Section 1132(a)(3) for prohibited

transactions and breach of fiduciary duty on behalf of himself.  Plaintiff Laura Patterson has claims under State law for malicious prosecution, abuse of process, and tortious interference, and Kreiner & Peters is only a defendant in her case.  (*Laura Patterson* ECF No. 72, PageID #1801; *Eric Patterson* ECF No. 91, PageID #2411.) Given the complicated factual and procedural record in these cases, the Court recites only those matters relevant to the current discovery dispute.

At a status conference on May 28, 2026, Plaintiffs' counsel raised the failure of Kreiner & Peters to respond to discovery—or to provide a privilege log—on the basis of attorney-client privilege and attorney work product.  (*Laura Patterson* Minutes, May 28, 2026; *Eric Patterson* Minutes, May 28, 2026.)  At the status conference, counsel articulated their respective views on the issues.  Based on discussion with counsel, the Court ordered Plaintiffs to provide their discovery requests to the Court and for Kreiner & Peters to serve a privilege log by June 26, 2026, which it did.  (*Id.*)

At a status conference on June 30, 2026, Plaintiffs again claimed that Kreiner & Peters was withholding certain information and not producing a witness for deposition based on claims of privilege.  (*Laura Patterson* ECF No. 87; *Eric Patterson* ECF No. 106, June 30, 2026.)  Specifically, Plaintiffs argued that Kreiner & Peters was withholding discovery pertaining to Mr. Patterson's payment to Defendants, including the firm's retainer and/or service agreements related to its representation of the Plan and the other Defendants; information regarding the tracing of that payment; and information regarding the payment of costs in the underlying litigation giving rise to these federal lawsuits.  (*Laura Patterson* ECF No. 87, PageID #1936,

2

*Eric Patterson* ECF No. 106, PageID #2546.)  Kreiner & Peters confirmed that it was withholding the discovery based on claims of privilege and did not see the point of the deposition in light of its position on privilege and work product.  (*Id.*)  Therefore, the Court ordered Plaintiffs to file a notice by July 6, 2026, identifying the specific information sought from Kreiner & Peters withheld as privileged and for each side to file a brief outlining their respective positions on what is and what is not privileged and why.  (*Id.*)

Plaintiffs identify three general category of outstanding discovery involving Kreiner & Peters:  (1) the firm's fee agreements concerning the subrogation and reimbursement claims made against Plaintiffs and documents regarding the ultimate source of payment for these agreements; (2) communications, including with the clients of Kreiner & Peters during the prior State court proceedings, regarding the production or withholding of documents related to the Swagelok Plan; and (3) the deposition of Kreiner & Peters.  (*Laura Patterson*, ECF No. 91, PageID #3134–35; *Eric Patterson*, ECF. No. 110, PageID #3744–45.)  The parties briefed whether the information in each category was properly withheld based on attorney-client privilege and work product.  (*Laura Patterson* ECF No. 94, ECF No. 95 & ECF No. 96; *Eric Patterson* ECF No. 113, ECF No. 114 & ECF No. 115.)

## ANALYSIS

Under Rule 501 of the Federal Rules of Evidence, the common law—"as interpreted by United States courts in the light of reason and experience"—governs

3

a claim of privilege for claims under federal law.  Fed. R. Evid. 501.  Where State law supplies the rule of decision, State law governs a claim of privilege.  *Id.*

## I.      Framework for Claims of Privilege in These Cases

The party asserting a claim of privilege bears the burden of establishing its applicability.  *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992).  To do so, a party must establish all of the following:  (1) legal advice was sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relate to that purpose; (4) were made in confidence (5) by the client; (6) are at his instance permanently protected (7) from disclosure by the legal adviser; (8) unless the protection was waived.  *Id.* (quoting *Humphreys, Hutcheson & Moseley v. Donavan*, 755 F.2d 1211, 1219 (6th Cir. 1985)).

Now codified in Rule 26(b)(3), the work-product doctrine protects "any document prepared in anticipation of litigation by or for the attorney."  *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986).  Ordinary work product, not including a lawyer's mental impressions, is discoverable upon a showing of substantial need and an inability to obtain the substantial equivalent without undue hardship.  Fed. R. Civ. P. 26(b)(3)(A).  In contrast, opinion work product—an attorney's mental impressions—receives heightened protection.  Fed. R. Civ. P. 26(b)(3)(B); *Hickman v. Taylor*, 329 U.S. 495, 511–12 (1947); *United States v. Roxworthy*, 457 F.3d 590, 593–94 (6th Cir. 2006).

4

### I.A.    ERISA and the Fiduciary Exception

Federal courts have developed common-law principles for application of privilege in the ERISA context.  Specifically, a fiduciary exception to claims of privilege.  Under this exception, an attorney who gives advice to a client acting as a fiduciary for third-party beneficiaries owes the beneficiaries a duty of full disclosure.  *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 595 (6th Cir. 2012) (citing *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)).  Therefore, "a fiduciary of an ERISA plan must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan."  *Moss*, 495 F. App'x at 595 (quotations omitted).  "When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator."  *Id.* (quotations omitted).  Therefore, "a trustee who obtains legal advice related to" executing its fiduciary obligations may not assert the attorney-client privilege against beneficiaries of the trust."  *Kramer*, 128 F.4th at 746 (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 167 (2011)).  Privilege does not attach to administrative functions because a mutuality of interest exists between the fiduciary and the beneficiary.  *Id.*

But the fiduciary exception does not require disclosure of every communication from an attorney to a plan administrator.  It applies only to communications related to plan administration and not to communications after a final decision.  *Id.* at 595–96.  Nor does it apply to a challenge to a plan administrator in his or her personal

capacity. *Id.* Where the fiduciary of a plan retains counsel to defend itself against the plan beneficiaries, privilege remains intact. *Id.* Illustrating operation of the exception, the Sixth Circuit in *Moss* held that the plaintiff sought only documents created after the initiation of litigation and not relating to plan administration.

### I.B. This Litigation

The parties dispute whether federal law or State law applies to the claims of privilege at issue. (*See generally Laura Patterson* ECF No. 94, ECF No. 95 & ECF No. 96; *Eric Patterson* ECF No. 113, ECF No. 114 & ECF No. 115.) No fiduciary exception applies to claims of privilege under Ohio law. On the facts and circumstances of this case, the dispute between the parties fundamentally involves ERISA. After all, those are the claims Mr. Patterson brings. In their litigation in State court, the core issue in the cases involving both Eric and Laura Patterson concerned whether the Plan or summary plan document required subrogation and reimbursement. The parties dressed up those issues by using various theories, claims, and defenses under State law. At bottom, however, the parties' disputes in State court involved ERISA.

Put another way, Defendants cannot do an end run around the fiduciary exception by claiming that all their work relating to plan administration falls within a broad claim of privilege under Ohio law because of the litigation between the parties in State court. That litigation involved a mix of work—some privileged under traditional principles of attorney-client privilege and work product protections; some

relating to plan administration.  Indeed, Defendants unsuccessfully sought to bring those issues to federal court to litigate under ERISA.

For these reasons, ERISA frames the relationship between the parties at issue in this litigation and the underlying events giving rise to it.  Therefore, the Court applies federal privilege law consistent with Rule 501 and the fiduciary exception.  Under that framework, the Court determines that information regarding counsel's advice to the fiduciary for purposes of plan administration is discoverable no matter when the advice was sought.  But information regarding counsel's advice about the fiduciary's legal liability between the parties is not.  On the facts and circumstances of this litigation, the line is not temporal, it is functional.  That leaves Ohio law to govern claims of privilege over litigation documents that do not involve plan administration.  As for the parties' dispute over the applicability of the crime-fraud exception, based on the record as it stands, it is premature to determine whether the exception applies.

## II.     Application to the Discovery at Issue

Plaintiffs identify a handful of items in dispute, which the Court addresses applying the principles discussed above.

### II.A.   Retainer or Service Agreements

Federal courts recognize that fee agreements establishing client relationships are generally not privileged.  *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451–53 (6th Cir. 1983).  "In the absence of special circumstances, the amount of money paid or owed to an attorney by his client is generally not within the attorney-

client privilege." *United States v. Haddad*, 527 F.2d 537, 538–539 (6th Cir. 1975) (internal citations omitted).  Specifically, the receipt of fees from a client is not usually privileged because the payment of a fee is "not normally a matter of confidence or communication." *Id.*

Plaintiffs argue that the fee agreements of Kreiner & Peters are "engagement contracts, not confidential communications seeking legal advice." (*Laura Patterson* ECF No. 95, PageID #3232; Eric Patterson ECF No. 114, PageID #3842.)  Specifically, they maintain that the fee agreements are "ordinary business records" and that "[n]o mental impressions of counsel are revealed by disclosing who hired K&P.  (*Laura Patterson* ECF No. 95, PageID #3233; *Eric Patterson* ECF No. No. 114, PageID #3843.)  Kreiner & Peters does not specifically address the agreements. (*See generally Laura Patterson* ECF No. 94; *Eric Patterson* ECF No. 113.)  Instead, it argues that an attorney-client relationship existed because it was retained to defend the two State court lawsuits brought by the Pattersons.  (*Laura Patterson* ECF No. 94, PageID #3226; *Eric Patterson* ECF No. 113, PageID #3836.)  Optum argues that a fee agreement is a "communication between lawyers and clients" and that "any portion containing legal strategies, motives, or requests for legal advice . . . is confidential." (*Laura Patterson* ECF No. 96, PageID #3247; *Eric Patterson* ECF No. 115, PageID #3857.)

Not every document or communication is privileged just because an attorney-client relationship exists.  Indeed, the privilege does not protect a client's identity or amount of payment.  *United States v. Ritchie*, 15 F.3d 592, 602 (6th Cir.

1994) (citing *In re Grand Jury Proc.*, 689 F.2d 1351, 1352 (11th Cir. 1982)). And a blanket refusal to produce any information regarding the requested fee agreements runs afoul of Rule 26, which requires the party asserting a claim of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Although federal law does not generally privilege retention letters (except in circumstances not applicable here), out of an abundance of caution, the Court conducted an *in camera* review of the engagement agreements at issue. It also did so because Kreiner & Peters did not provide a sufficiently detailed privilege log to allow evaluation of the claim of privilege without that step. (*Laura Patterson* ECF No. 97; *Eric Patterson* ECF No. 116.) Based on its review of the documents *in camera*, the Court determines that the materials provided are not privileged or protected by the work product doctrine. Therefore, the Court **ORDERS** Kreiner & Peters to produce all the materials submitted for *in camera* review, including the cover letter.

### II.B.  Tracing

Tracking the transfer of money is considered an administrative or clerical task rather than a confidential legal communication. *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968). Therefore, tracing funds is generally not privileged. *Id.* Under the ERISA framework, tracing funds remains discoverable, unless the money was spent on legal counsel to defend the administrator. *See Moss*, 495 F. App'x at

595–96.  To conclude otherwise would set law firms up as black boxes for money laundering or other clandestine activity as if they were Swiss banks.

Plaintiffs argue that billing and payment records are simply "ordinary business records" and are not work product because they provide "[n]o mental impressions of counsel." (*Laura Patterson* ECF No. 95, PageID #3233; *Eric Patterson* ECF No. 114, PageID #3843.)  Again, Kreiner & Peters does not specifically address the issue whether payment records are privileged but relies on their blanket claim of privilege.  (*See generally Laura Patterson* ECF No. 94; *Eric Patterson* ECF No. 113.)  Optum argues that any bills, invoices, or communications about bills or invoices between Kreiner & Peters and its clients containing legal advice are "shielded and protected from disclosure."  (*Laura Patterson* ECF No. 96, PageID #3247; *Eric Patterson* ECF No. 115, PageID #3857.)  Specifically, Optum argues that to the extent these bills or invoices "reveal confidential information," they are protected by attorney-client privilege.  *Id.*

Defendants do not allege, or describe in the privilege log, that the payments were spent on legal counsel to defend against their own liability.  Additionally, the assertion of privilege is not all-inclusive, and information regarding the payment of expenses associated with the fee agreements is a factual component of the fiduciary's routine administration.  Therefore, to the extent that no legal advice or mental impressions of counsel are revealed, the tracing of funds is discoverable in this case under the fiduciary exception.

10

### II.C.  Communications

As previously noted, the facts regarding a document's production, existence, and location are discoverable.  To the extent communications concern the administration of the plan, those communications are discoverable. In contrast, communications concerning litigation are not discoverable, absent an exception or waiver.  Further, disclosure to any persons outside the privileged relationship waives the asserted privilege. *Reed*, 134 F.3d at 357.  On the record as it stands, it is unclear whether a third-party disclosure has taken place because Kreiner & Peters simply refers to a "client" in both privilege logs. (*See generally Laura Patterson* ECF No. 91-3 & ECF No. 91-4; *Eric Patterson* ECF No. 110-3 & ECF No. 110-4.)  Without providing the recipients of a communication (which is not privileged) in the privilege logs, no determination regarding a claim of privilege can be made at this time.

### II.D.  Deposition of Kreiner & Peters

Kreiner & Peters cannot refuse to designate a witness under Rule 30(b)(6) to testify on its behalf.  A party is entitled to depose a witness to obtain testimony, assess credibility, and explore personal knowledge.  Fed. R. Civ. P. 30.  Rule 30 does not preclude a party from deposing a law firm named as a defendant in litigation. *Id.* Further, a deposition is not precluded because certain information rests within public knowledge. *Id.*  Here, the firm likely has some discoverable information that falls within the fiduciary exception.  Undoubtedly, other information it possesses will be privileged.  At the very least, Kreiner & Peters must provide discovery to allow Plaintiffs to evaluate its claims of privilege and to ascertain what discoverable

fiduciary information it has. A blanket claim that it only possesses information on one side of that line does not withstand cursory review.

## CONCLUSION

The Court **ORDERS** the parties to meet and confer to apply the framework outlined in this Order to resolve their remaining discovery disputes. The Court schedules a status conference on August 19, 2026 at 3:00 p.m. by Zoom. At that conference, the Court will address any and all remaining discovery disputes to finally resolve them. If the parties have issues for the Court to resolve, the Court **ORDERS** them to file, by August 18, 2026 at noon, a single joint status report containing a numbered list of the specific issues and no other information or argument.

**SO ORDERED.**

Dated: July 31, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio

12